**Sherry L. JACOBS**

v.

**TOWN OF SCITUATE; and Richard Agnew, Individually and as Administrator of the Town of Scituate.**

**Civil Action No. 95–11759–GAO.**

United States District Court, D. Massachusetts.

Nov. 14, 1996.

George C. McMahon, Law Offices of George C. McMahon, North Quincy, MA, for Sherry L. Jacobs.

Barbara J. Saint Andre, Kopelman & Paige, P.C., Boston, MA, Joseph L. Tehan, Jr., Kopelman & Paige, P.C., Boston, MA, for Town of Scituate, Massachusetts, Richard Agnew.

### MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff, Sherry Jacobs, filed suit against the Town of Scituate, Massachusetts, and its administrator, Richard Agnew, for damages she claims were caused by the defendants' unlawful interference with her efforts to expand her residential facility for recovering alcoholics. Her complaint alleged that the Town and Agnew violated the Fair Housing Act, violated her federal and state constitutional rights, intentionally interfered with her contractual relations, and intentionally inflicted emotional distress upon her. On February 26, 1996, Jacobs' claim for violation of the Fair Housing Act, 42 U.S.C. § 3604, and her claim for intentional infliction of emotional distress were dismissed by this Court pursuant to Fed.R.Civ.P. 12(b)(6). The Court now concludes that summary judgment in favor of the defendants is appropriate on the remaining claims.

## FACTS

In August 1993, Jacobs purchased a storm-damaged house from the Town of Scituate for one dollar, on the condition that she move it from its site at Pegotty Beach by October 4, 1993.[1] She planned to use the building as an addition to a home for recovering alcoholics that she owned and operated elsewhere in Scituate. Initially, Jacobs contracted with New England Building Movers & Riggers to move the house via an "over-land" route. Jacobs received all necessary permits to move the house, except that the Town's tree warden denied her request to cut several trees along the route in order to make room to move the house along the contemplated route. Consequently, Jacobs did not move the house by the October 4th deadline.

After the original deadline passed, Agnew granted her a permit to move the house, but required that she move it on the same day that another house was to be moved from Pegotty Beach. Since she was unable to move the house via her preferred "over-land" route, she made arrangements with Nickerson Building Movers, Inc. to move the house by barge across Scituate Harbor and then by land to the intended location. The other Pegotty Beach house was also to be moved by barge. Both houses would be barged to a "landing area" in downtown Scituate from where they would be transported over land.

Agnew insisted that the houses be moved on the same day in order to avoid the attendant disruptions—some telephone wires had to be lowered—being unnecessarily repeated. On the day that Jacobs moved her house, however, the moving company was not able to move the other house as well because of rough seas and other weather conditions. Consequently, Jacobs' house was moved to the landing area, but could not be moved through town so long as Agnew continued to require the two houses to be moved through town on the same day. Jacobs brought suit for an injunction in the state Superior Court, which ordered the Town to allow Jacobs to move her house through the town, even if the other house was not moved at the same time.

She moved the house, but it cost her more than it would have if she had been able to carry through her original plans.

## DISCUSSION

The defendants have moved for summary judgment on the remaining claims in this case. Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In Count II, brought under the authority of 42 U.S.C. § 1983, Jacobs asserts that her right to equal protection of the laws guaranteed by the United States Constitution was violated by the defendants because she was treated differently from other persons who had bought Pegotty Beach houses and wanted to move them. Jacobs says that she was treated differently because others were allowed to move their houses over land and she had to move her house by barge. She claims she was treated differently because she operates a home for recovering alcoholics.

■ Agnew is protected from this claim by the doctrine of qualified immunity. See *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). All his decisions were discretionary ones, and they did not violate any clearly established statutory or constitutional rights. As to Scituate, Jacobs has failed to point out any policy or custom followed by the Town that deprived her of constitutional rights. See *Monell v. Department of Social Servs. of New York*, 436 U.S. 658, 692–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978).

■ These reasons are sufficient. Even apart from them, the equal protection claim could not succeed. To prove such a violation, a plaintiff must establish that, "compared with others similarly situated, [she] was selectively treated; and ... that such selective treatment was based on impermissible con-

---

1. A number of properties on Pegotty Beach that had been damaged in a storm were conveyed to Scituate by the Federal Emergency Management Agency ("FEMA"). FEMA imposed the express condition that the dwellings be removed or razed by October 9, 1993.

siderations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [her]." *Rubinovitz v. Rogato,* 60 F.3d 906, 910 (1st Cir.1995) (quoting *Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of Selectmen,* 878 F.2d 16, 21 (1st Cir.1989)). Jacobs presents no evidence that she was treated differently from persons similarly situated to her. The Town did not permit her to cut down trees, but neither did it permit any one else to do so. Further, even if any selective treatment occurred, Jacobs has not shown that it was based on any impermissible consideration.

In Count III, Jacobs claims that the defendants interfered with her rights in violation of Mass.Gen.L. ch. 12, § 11I. To sustain a claim under this provision, she must prove that the defendants interfered or attempted to interfere with her rights by "threats, intimidation or coercion," and Jacobs has not alleged any conduct that could be said to amount "coercion." *See Swanset Dev. Corp. v. City of Taunton,* 423 Mass. 390, 395–96, 668 N.E.2d 333 (1996) ("We have referred to 'coercion' as 'the use of physical or moral force to compel [another] to act or assent.' ").

Finally, in Count IV, Jacobs claims that the defendants intentionally interfered with her contractual relations. In order to establish such a claim, a plaintiff must show "(1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendants' knowledge of the contract or business relationship; (3) the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages." *Id.* at 397, 668 N.E.2d 333. Jacobs alleges that the defendants' refusal to cooperate with her initial moving plans amounted to an interference with her contracts with the mover, so that she had to pay higher moving costs than if she had been able to move the house as she planned. Such additional moving expenses may constitute consequential damages from some other wrong,[2] but they do not amount to an inten-

tional interference with contract rights as that tort is defined in Massachusetts law.

For all the foregoing reasons, the defendants' motion for summary judgment on Counts II, III, and IV of the complaint is GRANTED. The action is DISMISSED.